IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN LOPRESTI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-2832 |
| | : | |
| COUNTY OF LEHIGH, et al. | : | |
| | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **June 6, 2013**

Plaintiff Kathleen Lopresti sues her former employer, Lehigh County, and former employee union, American Federation of State, County and Municipal Employees District Council 88, Local 543, AFL-CIO (AFSCME), for breach of contract and breach of duty of fair representation respectively. Lopresti alleges the County breached her employment contract by terminating her without just cause, and AFSCME breached its duty of fair representation by withdrawing the grievance concerning her termination. Defendants have each filed a motion for summary judgment. For the following reasons, Defendants' motions will be granted.

## FACTS[1]

The County hired Lopresti to work as a Corrections Officer (CO) at the Leigh County Prison in 2002. On August 18, 2011, Lopresti was assigned to work in Unit 2C, a violent offender housing unit. During her shift, Lopresti was positioned at a podium in the center of the room where inmates continually approached her. The inmates were agitated that evening because an inmate on the cell block, inmate Hurdle, was assisting police in an investigation. Lopresti attempted to distract the inmates by handing out permitted items such as napkins, soap,

---

[1] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

and toilet paper.   At approximately 9:00 p.m., Lopresti received a telephone call from her supervisor, Sergeant Brooke Loane, who asked her to make arrangements to isolate inmate Hurdle.  During the call, Lopresti also asked Loane about moving another inmate.  Lopresti did not want the other inmates to hear this conversation out of concern for the safety of the inmates being moved, so she waved her hands in an attempt to keep nearby inmates away from the podium.

During the phone conversation Lopresti told Loane, "the inmates are acting stupid. Something is wrong over here."  Lopresti claims this statement was not directed at any specific inmate and at no point did she did call anyone stupid.  One inmate was particularly agitated and making complaints, so Lopresti approached this inmate to give him a complaint slip.  Upon Loane's arrival at the cellblock, Loane relieved Lopresti of her duties and ordered her to turn over her wand, keys, and radio.

Loane filed an incident report about the events of August 18, 2011.  In the report, Loane stated she heard Lopresti call inmates on the housing unit "stupid" in an amplified voice, directing the statements toward the inmates.  She also reported that when she arrived at the cell block she observed Lopresti yell at an inmate, "you are so freaking stupid how many times do I need to tell you to leave, you never listen, why don't you run the pod if you know everything?" Finally, Loane described seeing Lopresti approach an inmate in an "aggressive manner," while removing her radio from her belt, holding it out in front of her, and telling the inmate to take it and run the housing unit for her.  County's Mot. for Summ. J. Ex. A-1.  As noted, Lopresti disputes Loane's account of the August 18, 2011, incident.

The incident was also captured by a video camera stationed in the ceiling of the cellblock. The video, which has no sound, is of poor quality.  It shows Lopresti standing at the podium in

the center of the room.  With approximately three inmates standing around the podium, Lopresti appears to lift both of her arms in such a way as to suggest she is directing the inmates to move away.  At approximately 9:03 p.m., the video shows Lopresti holding her arm out in front of her gesturing toward an inmate who is standing against a wall.  There are no inmates standing near the podium when she does this.  Lopresti then steps away from the podium and approaches the inmate; however, it is unclear from the video whether she unclips something from her belt, or has anything in her hand.  Loane can be seen entering the frame of the video prior to Lopresti leaving the podium.

On September 6, 2011, the County held an administrative hearing before Director of Corrections Edward Sweeny regarding the August 18, 2011, incident.  At the conclusion of the hearing Sweeny terminated Lopresti stating there was "a repeated pattern of [her] being belligerent to other people . . . several repeated prior incidents where [she] ha[d] used words like dumb and stupid towards [her] interaction with inmates."  Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ J. Ex. B, at 8.  The following day the County issued a formal termination letter to Lopresti explaining she was being terminated because of her: (1) "failure to comply with the requirements of County policy directives as well as Department of Corrections and/or facility policy directives," and (2) "conduct in violation of Developmental policy relating to 'Contacts with Inmate/Residents and Ex-Offenders."  County's Mot. for Summ. J. Ex. B-5.  The letter further noted Lopresti's repeated history of volatile, disrespectful behavior toward both staff and inmates, her ongoing refusal to accept responsibility for her behavior, and her ongoing failure to address self-control problems.  The letter also stated Lopresti's continued employment as a corrections officer posed a threat to herself, other staff, and inmates.

At the time she was terminated, Lopresti had three formal disciplinary actions in her personnel file in addition to the August 18, 2011, incident. Each action was issued following the filing of an Employee Offense Report by a supervisor and a hearing before Prison Warden Dale Meisel. On June 21, 2006, Lopresti received a reprimand letter from Meisel for acting in an insubordinate fashion toward her supervisor and for being provocative to an inmate during an unclothed search procedure. On December 5, 2008, she was suspended for one day without pay for using inappropriate, pejorative, and obscene language toward a fellow employee. On August 4, 2009, she was suspended for five days without pay as the result of to two separate instances where she made racially charged comments to a fellow CO. The letter relaying Lopresti's punishment for this last incident acknowledged it was her third incident of disrespectful behavior toward a co-worker in as many years and stated her behavior was unprofessional and inappropriate. The letter also stated any future incidents of unprofessional interactions with her co-workers would result in termination. In addition to these formal disciplinary letters, Lopresti's personnel file contained notes from supervisors regarding other incidents of unprofessional behavior. The prison grievance file also contained numerous inmate complaints about Lopresti, alleging she acted in an unprofessional manner by yelling or cursing at inmates, called inmates names, and directed racial epithets at inmates.

As a County employee, Lopresti was also a member of the employee union, AFSCME. The collective bargaining agreement (CBA) between the County and AFSCME establishes a grievance and arbitration procedure for employee terminations. Pursuant to the CBA, AFSCME filed a grievance on Lopresti's behalf regarding her termination on September 12, 2011. On September 14, 2011, the County denied the grievance. On October 13, 2011, AFSCME's local staff representative, Walter Francis, initiated grievance arbitration proceedings with the

American Arbitration Association (AAA).  As a staff representative, Francis was responsible for processing grievances for Lehigh County Prison employees.  Part of his job was to evaluate the merits of each grievance he handled.  In order to prepare for arbitration, Francis typically met with the grievant, prepared a witness list, met with witnesses, and discussed the hearing with the union executive board or the chief steward at the local union.

In addition to filing a grievance, Lopresti filed a claim for unemployment compensation benefits, which the County opposed.  On November 23, 2011, a Notice of Determination was issued, denying Lopresti's unemployment compensation claim and advising her she had until December 6, 2011, to file an appeal.  On November 29, 2011, the County, through Sweeny, sent an email to Francis proposing to resolve Lopresti's grievance by agreeing not to contest Lopresti's receipt of unemployment compensation benefits in exchange for a waiver of rights, including AFSCME's withdrawal of the grievance.  The County also offered to convert Lopresti's termination to a voluntary separation.  Francis responded a day later, advising Sweeny he would consider the settlement proposal.

On December 1, 2011, Francis informed Lopresti the arbitration hearing regarding her grievance was scheduled for January 19, 2012.  Lopresti and Francis met in person on January 5, 2012, at which time Francis did not have Lopresti's full personnel file, and had not seen the videotape of the incident.  Francis did have some familiarity with Lopresti's past personnel problems, as evidenced by his comment to Lopresti that she had a history of similar behavior.  During the January 5 meeting, Francis advised Lopresti he believed there was a 50/50 chance of succeeding at the arbitration hearing.  On the evening of January 5, Lopresti left a voicemail for Francis informing him she would accept the County's proposed settlement offer.  On January 6, 2012, Francis informed the County that Lopresti would accept the settlement, and also requested

a neutral employment reference.  After informing the County of Lopresti's intention to accept the settlement offer, Francis received a voicemail from Lopresti's attorney, Richard Orloski, in which Orlaski stated he had failed to timely submit Lopresti's appeal of the denial of unemployment compensation benefits.  Because Lopresti had no pending appeal it was impossible for the County to perform its obligations under the settlement.  On January 9, 2012, Lopresti left Francis a voicemail informing him that because unemployment compensation benefits were no longer available to her, she wanted to proceed with the scheduled arbitration.

On January 11, 2012, Francis emailed Sweeny informing him Lopresti had missed the deadline for filing an appeal from the denial of unemployment compensation benefits and that the arbitration was going forward.  Francis also requested a copy of the surveillance videotape. In preparation for the arbitration hearing, Francis reviewed the initial incident report and videotape, and spoke with the Local 543 Shop Steward, Glenn Good, and Sweeny, about Lopresti's past disciplinary write-ups and suspensions.  On or about January 18, 2012, Francis watched the videotape with his director, Thomas Tosti, and another colleague.

After reviewing the videotape, Francis informed Lopresti by phone on January 18 that he was withdrawing the grievance.[2]  He told her he had viewed the videotape and he believed it was consistent with Sergeant Loane's incident report, showing Lopresti making arm gestures, extending her arm out, and putting her radio on the podium.  He also told Lopresti he believed the grievance lacked merit based on Sergeant Loane's incident report and videotape, and after speaking with Lopresti and assessing her credibility.  Following this phone conversation Francis

---

[2] Lopresti argues in her brief that Francis informed her he was withdrawing the grievance on January 17, before he viewed the videotape.  As discussed in greater detail below, this allegation is not supported by the record.

6

sent Lopresti a formal notification that the grievance was being withdrawn. AFSCME withdrew Lopresti's grievance the following day, on January 19, 2013.

Lopresti maintains that the Lehigh County Prison was a difficult work environment for women.[3] Male CO's treated women working as CO's disrespectfully, often subjecting them to harassment. In 2005, Lopresti testified at the termination hearing of a fellow CO, and was blamed by many of her male colleagues for the CO's termination. Lopresti believes she was the target of a coordinated effort by her male colleagues to get her fired. The union also allegedly treated women in a hostile manner. Lopresti asserts AFSCME had a history of fighting for men, but not fighting for women, as evidenced by the fact that male employees accused of criminal wrongdoing received the benefit of a grievance arbitration hearing, while women accused of far less serious wrongdoing did not receive such benefits.

Lopresti filed the instant lawsuit against the County and AFSCME on May 23, 2012, alleging age discrimination and breach of contract by the County and age discrimination and breach of duty of fair representation by AFSCME. On September 19, 2012, Lopresti filed a motion for voluntary non-suit on the age discrimination claims. The Court granted the motion on September 20, 2012. The following claims remain: (1) breach of duty of fair representation

---

[3] Lopresti submitted an unsworn statement by Vicki Jones to support her assertion that the Prison was a hostile work environment for women. However, the Third Circuit has found that unsworn testimony is "not competent to be considered on a motion for summary judgment." *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989). Although an unsworn statement subscribed to under penalty of perjury can substitute for a sworn declaration, s*ee* Fed. R. Civ. P. 56 advisory committee's note, a declaration not sworn to or made under penalty of perjury is not sufficient to dispute a fact in connection with a motion for summary judgment, *Wagner v. Miss. Rubber & Specialty Co.*, No. 08-87085, 2013 WL 1890372, at *1 n.1 (E.D. Pa. Apr. 3, 2013). Therefore, the Court will not consider the unsworn statement of Jones.

against AFSCME (Count III); and (2) breach of contract against the County (Count IV).

**DISCUSSION**[4]

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh*, 418 F.3d at 267. To defeat a summary judgment motion, the non-moving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file" to show there is a genuine issue of material fact. *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Lopresti argues AFSCME breached its duty of fair representation by acting arbitrarily, discriminatorily, and in bad faith in withdrawing her grievance prior to arbitration. *Vaca v.*

---

[4] Lopresti argues this case should be remanded to state court because the only remaining claims arise under state law. *See* 28 U.S.C. § 1367(c)(3) (providing a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). In deciding whether to retain supplemental jurisdiction where federal law claims have been dismissed or abandoned, this Court must consider "principles of judicial economy, convenience, and fairness to the litigants." *Growth Horizons, Inc. v. Del. Cnty.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In the instant action, discovery has already been completed, and the Court has ruled on several motions and held two settlement conferences. Furthermore, Lopresti did not request remand of the state law claims until after discovery had been completed. Thus, in the interests of judicial economy, convenience, and fairness to the parties, this Court will retain jurisdiction.

*Sipes*, 386 U.S. 171, 190 (1967) (noting a breach of the duty of fair representation occurs when a union's conduct toward one of its members is "arbitrary, discriminatory, or in bad faith").[5] Specifically, Lopresti asserts AFSCME's withdrawal of her grievance without good reason or thoughtful analysis amounted to a violation of its duty of fair representation, as "in the context of a grievance proceeding . . . a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir. 1981) (quoting *Vaca*, 386 U.S. at 191). The Third Circuit has clarified this perfunctory standard, stating "[m]ere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory' . . . [but] require[s] a showing of actual bad faith or arbitrary conduct." *Riley*, 668 F.2d at 224 (quoting *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 960 n.2 (3d Cir. 1981)); *see also Bazarte v. United Transp. Unit*, 429 F.2d 868, 872 (3d Cir. 1970) (finding it is not enough for the plaintiff to prove that the union acted negligently or exercised poor judgment). A breach of duty of fair representation based on arbitrariness occurs only where the union's conduct can be characterized as "so far outside a wide range of reasonableness, that it is wholly irrational or arbitrary." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (internal citation omitted). A breach based on bad faith occurs where there is "substantial evidence of fraud, deceitful action or dishonest conduct." *Wilson v. Am. Postal Workers Union*, 433 F. Supp. 2d 444, 449 (D. Del. 2006) (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)).

---

[5] Pennsylvania courts apply the same standard for a duty of fair representation claim as federal courts. *See Casner v. AFSCME*, 658 A.2d 865, 871 (Pa. Commw. Ct. 1995) (applying the standard set forth in *Vaca*). Therefore, federal case law serves as persuasive authority for the state law duty of fair representation claim.

Lopresti argues she should have been given the chance to explain her version of the incident to an arbitrator, and if her case had gone to arbitration, it is conceivable an arbitrator would have found in her favor, making AFSCME's failure to go through with the arbitration a breach of its duty of fair representation.  Whether or not Lopresti could have won at arbitration is not the proper standard by which to evaluate a breach of duty of fair representation claim.  An individual employee does not have an absolute right to arbitration of her grievance.  *Vaca*, 386 U.S. at 191.  An employee is subject to the union's discretionary power to settle or abandon a grievance as long as the union does not act arbitrarily, which "is true even if it later can be demonstrated that the employee's claim was meritorious."  *Bazarte*, 429 F.2d at 872.

The evidence in the record is, as a matter of law, insufficient to establish that Francis and AFSCME's conduct rose to the level of bad faith and arbitrariness necessary to support Lopresti's claim for a breach of duty of fair representation.  "'[B]are assertions' of arbitrary or bad faith conduct by the union cannot survive a motion for summary judgment."  *Weber v. Potter*, 338 F. Supp. 2d 600, 607 (E.D. Pa. 2004) (citing *Masy v. N.J. Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir. 1986)).  The record reflects that AFSCME pursued Lopresti's grievance until just prior to arbitration, when it decided to withdraw the grievance for lack of merit.  *See Vaca*, 386 U.S. at 192 (holding a union will not be deemed to have breached its duty of fair representation "merely because it settled the grievance short of arbitration").

Lopresti first points to the existence of a "working agreement" between the County and AFSCME, whereby AFSCME would agree not to pursue grievances on behalf of older workers and the County would agree not to contest the workers' unemployment compensation claims, as evidence of AFSCME's bad faith.  In regard to this alleged agreement, Lopresti asserts in her Complaint that on January 18, 2012, when Francis called to inform her he was withdrawing the

grievance, he told her AFSCME was implementing an agreement with the County to eliminate older corrections officers.  Lopresti may not rely solely on these conclusory allegations from her Complaint, but rather must cite to specific parts of the record to support this assertion.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . .").

Lopresti strains to demonstrate evidence of such an alleged working agreement.  She relies on the email exchange between Sweeny and Francis beginning on November 29, 2011, regarding a potential grievance settlement as evidence of this agreement.  Lopresti points to the fact that Francis did not tell her about the settlement offer until 37 days later, on January 5, 2013, and encouraged her to take the offer without having viewed her personnel file or the videotape of the incident, or having interviewed a single witness.  Lopresti argues Francis's failure to promptly tell her about the offer and pressuring her to take it without having done any investigating supports her claim of a working agreement.  However, when asked about the existence of the agreement during her deposition, Lopresti responded that her knowledge of the agreement was based on her observations regarding the number of times Francis spoke with Sweeny as compared to her, and stated her belief in the existence of a working agreement was based solely on the fact that AFSCME did not want to go through with the arbitration and wanted her to sign a waiver to release the County from liability.  Additionally, when asked who advised her that AFSCME was implementing an agreement with the County to eliminate older corrections officers, she responded that "no one" had told her that.  County's Mot. for Summ. J. Ex. D, at 290.  There is thus no support for Lopresti's allegation of a working agreement, and this "bare assertion" of bad faith conduct by the union cannot survive a motion for summary judgment.  *Weber*, 338 F. Supp. 2d at 607.

Lopresti further alleges that during their January 5 meeting Francis told her she had less than a 50% chance of winning at arbitration and encouraged her to take the deal without examining her personnel file or viewing the videotape.  This allegation does not amount to arbitrary conduct or bad faith.  Having spoken to Sweeny about Lopresti's past history and having reviewed the incident report, Francis had some basis for believing she would not win at arbitration and recommending she take the County's settlement offer.  The law provides the union a "wide range of reasonableness" in performing its functions subject to "good faith and honesty of purpose in the exercise of its discretion."  *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563-64 (1976) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).  Lopresti also asserts Francis continued to encourage her to take the County's settlement offer and sign the waiver releasing the County from further liability after it became clear that the terms of the deal were no longer possible because her counsel had not filed a timely appeal of her unemployment compensation denial.  However, the record shows that after it became clear the settlement was no longer available, Francis so informed the County.  Ultimately, as this deal failed to materialize, through no fault of Francis or AFSCME, Francis's recommendation that she take the deal caused her no injury.  Lopresti's allegations at most amount to a complaint that Francis acted negligently and did not perform his due diligence as her union representative, which is not sufficient to show breach of duty of fair representation.  *See Bazarte*, 429 F.2d at 872 (finding it is not enough for the plaintiff to prove that the union acted negligently or exercised poor judgment).

Lopresti next argues Francis's failure to view the videotape until January 18, a day after he decided to drop the grievance, is further evidence of bad faith.  However, the record does not support Lopresti's assertion that Francis did not watch the videotape until after informing her he

12

was withdrawing her grievance.  Both Francis and his supervisor, Thomas Tosti, stated they watched the video together before Francis made the decision to drop the grievance, with Tosti's support.  Lopresti alleges Francis told her the case had no merit and AFSCME was dropping the grievance on January 17, a day before he watched the videotape; however, during her deposition Lopresti testified that she did not remember exactly when Francis told her the case had no merit, and stated it could have been after the conversation about his viewing of the videotape. Allegations made in a brief which are not supported by the record are insufficient to create a factual dispute such as to survive summary judgment.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he nonmoving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").  Lopresti's claim that Francis did not watch the videotape before deciding to drop the grievance is a claim she makes solely in her brief and is not supported by any evidence in the record.

Lopresti also argues Francis breached his duty of fair representation in the manner in which he investigated or failed to investigate her claim.  Specifically, she alleges he breached his duty by not going through the video or her personnel file with her, and by failing to interview witnesses.  As noted, the video is of poor quality and does not prove or disprove either party's version of the August 18, 2011, incident.[6]  Francis did view the video, and the fact that he watched it without Lopresti present is not enough to show bad faith.  *See Wilson*, 433 F. Supp. 2d

---

[6] In her brief and deposition, Lopresti repeatedly states the County terminated her for handing an inmate her wand, radio, and keys.  There is no evidence, however, that Lopresti was ever accused of taking this action, let alone that such actions served as the basis for her termination. Thus, although her assertion that the video proves she did not give an inmate her radio, keys, and wand is not disputed, her argument that the video supports her claim that she was wrongfully terminated and AFSCME's failure to proceed to arbitration was a breach of its duty of fair representation is without merit.

at 449 (noting standard for bad faith requires showing of substantial evidence of fraud, deceitful action, or dishonest conduct).  Insofar as Lopresti alleges Francis was acting in bad faith by failing to get obtain her personnel file, the record makes clear that while Francis did not request a complete copy of Lopresti's file until after he withdrew the grievance, it is undisputed he was aware of Lopresti's past disciplinary record, as she testified in her deposition that during their January 5 meeting he commented on her past history of repeating the same behavior.  It is also undisputed that Francis did not interview any witnesses other than Lopresti.  These failures, while suggesting that Francis did not perform his due diligence do not rise to the high levels required for a showing of bad faith and breach of duty of fair representation.  *See Bazarte*, 429 F.2d at 872 (finding that it is not enough for a plaintiff to show negligence or poor judgment to establish a breach of the duty of fair representation); *Bellesfield v. RCA Commc'ns, Inc.*, 675 F. Supp. 952, 956 (D.N.J. 1987) (same); *see also Findley*, 639 F.2d at 959 (finding the union's failure to brief the plaintiff before a hearing, failure to have additional consultations, and failure to interview other witnesses established no more than negligent conduct and did not establish a breach of duty of fair representation).  Ultimately, after watching the video, Francis determined it corroborated the County's version of the incident and concluded, based on the video, Lopresti's disciplinary history, and his own evaluation of her credibility that the grievance was without merit.  Viewing all of the evidence in the light most favorable to Lopresti, no reasonable jury could find Francis acted irrationally or deceitfully.  *See Air Line Pilots Ass'n, Int'l*, 499 U.S. at 78; *Wilson*, 433 F. Supp. 2d at 449.

Lopresti's final allegation regarding Francis's conduct is that he was motivated by personal animus, but she presents no evidence to support this assertion, pointing only to Francis's withdrawal of the grievance after AFSCME had already paid the arbitrator's fee and

14

after Lopresti's counsel had offered to pay all expenses, as evidence of bad faith.  A party resisting summary judgment must rely on more than bare assertions, conclusory allegations, or suspicions. *Reitmeir v. Kalinoski*, 631 F. Supp. 565, 567 (D.N.J. 1986) (citing *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103 (3d Cir. 1985)).  Even if Lopresti had produced evidence to support a finding of personal animus, this alone would not be enough to support a finding of arbitrariness or bad faith. *Maksin v. United Steel Workers of Am.*, 136 F. Supp. 2d 375, 382 (W.D. Pa. 2000) (finding animosity on the part of a union representative alone does not constitute a breach of the duty of fair representation, but rather the plaintiff must show the union representative was influenced by his hostility rather than by appropriate considerations).  Because Lopresti has been unable to show the handling of her grievance was influenced by inappropriate consideration, her claim that Francis possessed personal animus against her, even if supported by the record, would not be enough to show a breach of duty of fair representation.

As against AFSCME generally, Lopresti alleges union members had personal animus toward her as a result of the mistaken belief she had a familial relationship with one or more members of the Prison administration.  However, she makes only vague assertions that unidentified union members believed she was related to members of the administration.  Lopresti further alleges she at some point became aware of a $5,000 slush fund to be paid to any union member who could get her fired, but has produced no evidence to support the existence of such a fund.  She states Vicki Jones, a former CO who had been terminated by the County in 2010, told her about the slush fund, but this statement is hearsay, and is therefore not admissible on summary judgment. *Crocket v. Johns-Manville Corp.*, 109 F.R.D. 254, 255 (E.D. Pa. 1984) (finding an affidavit containing hearsay was not admissible on summary judgment).  Lopresti

could not name any other union members who told her about or knew of the existence of the slush fund.  In her deposition, Lopresti repeatedly stated the existence of the fund and the plan to get her fired "was just a known fact."  County's Mot. for Summ. J. Ex. 5, at 298-99.  Her unsupported opinion is not evidence.  Because Lopresti has not shown Francis knew of this "slush fund" or had personal animus towards her based on her family relationships, and moreover, has not shown how any alleged personal animus of "union members" impacted Francis's decision to withdraw the grievance, no reasonable juror could find Francis or AFSCME acted arbitrarily or in bad faith based on personal animus against her.

    In addition to claims of arbitrariness and bad faith, Lopresti argues AFSCME discriminated against her based on her gender, as evidenced by the union's history of fighting for men but not fighting for women.  The standard for discriminatory conduct constituting a breach of duty of fair representation has been analogized to the standard for violation of Title VII of the Civil Rights Act of 1964.  *Wilson*, 433 F. Supp. 2d at 449.  "The discrimination required to constitute a breach has also been characterized as 'invidious.'"  *Id.*  To support this allegation, Lopresti submits the affidavit of Phyllis Hamm, who successfully sued the County and AFSCME for reinstatement, stating AFSMCE would file grievances for men, but not for women.  The statement by Hamm is the only support Lopresti provides for her claim that AFCSME files grievances for men but not for women.  Lopresti lists additional examples in her brief of instances where AFSCME filed grievances for men but not for women, but there is scant evidence regarding these examples in the record.  *Bhatla v. U.S. Capital Corp.*, 990 F.2d 780, 787 (3d Cir. 1993) ("[T]o defeat a motion for summary judgment a party. . .  must rely on affidavits, depositions, answers to interrogatories, or admissions on file.").  In her brief, Lopresti also cites to three specific instances where AFSCME filed grievances for male COs accused of

criminal activities and of physically abusing an inmate, but the record establishes only that AFSCME pursued a grievance for one of these men.  There is no evidence regarding whether or not AFSCME pursued a grievance for the other two cited cases.  *Jersey Cent. Power & Light Co.*, 772 F.2d at 1109 (holding a legal memorandum is not evidence and cannot by itself create a factual dispute sufficient to defeat summary judgment).  The meager evidence Lopresti has produced does not create a material issue of fact that she experienced "invidious discrimination," and she has therefore failed to support her claim for breach of the duty of fair representation based on discrimination.

In sum, Lopresti attempts to establish her breach of duty of fair representation claim by showing Francis acted arbitrarily and in bad faith by failing to exercise due diligence as her union representative and AFSCME discriminated against her as a woman.  However, she has failed to put forth evidence that Francis or AFSCME engaged in behavior that was irrational, deceitful, or discriminatory.  Francis is entitled to a "wide range of reasonableness" in performing his duties, including the evaluation of the merit of Lopresti's grievance claim.  *Hines*, 424 U.S. at 563-64.  Treating the evidence in the light most favorable to Lopresti, no reasonable juror could conclude her allegations rise to the level of bad faith, arbitrariness, or discrimination necessary to sustain a breach of duty of fair representation claim, and AFSCME is therefore entitled to summary judgment on this claim.

Lopresti next asserts a breach of contract against the County.  This is a state law claim governed by the Pennsylvania Public Employee Relations Act, 43 Pa. Stat. Ann. § 1101.101 et seq. (PERA).  Under PERA an employee of a public institution cannot sue an employer for breach of contract damages.  *Dubose v. Dist. 1199C, Nat'l Union of Hosp. & Health Care Emp., AFSCME, AFL-CIO*, 105 F. Supp. 2d 403, 416 (E.D. Pa. 2000).  Pennsylvania case law further

establishes an employee has no cause of action against her employer for breach of contract where the employment relationship is governed by a collective bargaining agreement. *Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982) ("[A]n employee has no right to sue his employer in equity and assumpsit for wrongful discharge where his union has refused to proceed to arbitration."); *Runski v. Am. Fed'n of State, Cnty. & Mun. Emp., Local 2500,* 598 A.2d 347, 350 (Pa. Commw. Ct. 1991) ("[I]n Pennsylvania, as a general rule, an aggrieved public employee has no right to sue his or her employer for a breach of a collective bargaining agreement."), *aff'd*, 642 A.2d 466 (Pa. 1994).

In order to obtain damages against the County, Lopresti must show by specific facts that her employer actively participated in the union's bad faith or conspired with the union to deny her rights under the CBA. *Dubose*, 105 F. Supp. 2d at 416-17; *Runski*, 598 A.2d at 350 (holding a conclusory allegation of conspiracy insufficient to demonstrate that the Commonwealth actively participated in the union's bad faith or conspired with the union to deny the employee his rights under the CBA); *Speer v. Phila. Hous. Auth.*, 533 A.2d 504 (Pa. Commw. Ct. 1987) (holding damages against a public employer are not available as a remedy unless the employee demonstrates collusion between the employer and the union resulting in the union's breach of its duty of fair representation).[7]

Lopresti alleges in her Complaint that the County conspired with AFSCME to deprive her of her rights to an arbitration hearing under the CBA. Lopresti basis this claim on the

---

[7] In her Complaint, Lopresti alleges the County breached her employment contract by terminating her without just cause. As noted, Lopresti has no claim for breach of contract against the County. In order to recover damages against the County, Lopresti must show that the County colluded with AFSCME to deny her rights under the CBA. *Dubose*, 105 F. Supp. 2d at 416-17. In her breach of duty of fair representation claim against AFSCME, Lopresti alleges the existence of a conspiracy between the County and AFSCME. The Court will treat this allegation as the basis for Lopresti's claim against the County.

existence of a "working agreement" between the County and AFSME whereby AFSCME would agree not to pursue grievances on behalf of older workers and the County would agree not to contest the workers' unemployment compensation claims.  As discussed in detail above Lopresti has produced nothing beyond bare assertions, and nothing rising to the level of specific facts to support the claimed existence of an agreement between the County and AFSCNE.  *Runski*, 598 A.2d at 350; *Hughes v. Council 13, Am. Fed'n of State, Cnty. & Mun. Emp., AFL-CIO,* 629 A.2d 194, 195 (Pa. Commw. Ct. 1993) ("In order to survive a motion for summary judgment, the petitioner must allege . . . specific facts; mere conclusory allegations in the pleading without supporting factual allegations are not sufficient.").  Lopresti focuses on the email exchange between Francis and Sweeny regarding a potential grievance settlement and the frequency of Francis's communication with Sweeny as compared to her as evidence of a "working agreement" and "secret deal" between the County and AFSCME.  These facts are not suggestive of a conspiracy or participation by the County in Francis's decision to withdraw the grievance. Lopresti's description of this correspondence reveals nothing more than a discussion between the County and AFSCME regarding a possible settlement of her grievance.  Her labeling the proposal a "secret deal" does not make it such.

Lopresti's claims regarding the working agreement are almost entirely related to Francis's actions, amounting only to a claim that Francis was not doing enough to pursue her grievance.  She has made no showing that the County actively participated in any part of AFSCME's decision making.  Lopresti offers no evidence the proposed settlement offer by the County was ever intended to be a secret, or that the County played any part in keeping information from her.  The conclusory allegation that a conspiracy existed between the County and AFSCME does not satisfy the required showing necessary to survive summary judgment.

*See Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995) ("[A] plaintiff cannot survive a motion for summary judgment solely on the basis of conclusory allegations made in the complaint . . . .").  Lopresti has presented no evidence from which a reasonable juror could conclude that the County colluded with AFSCME to deprive her of her rights under the CBA. The County is therefore entitled to summary judgment on Lopresti's breach of contract claim.

For the reasons set forth above, AFSCME and the County's motions will be granted.  An appropriate Order follows.

BY THE COURT:


_____/s/ Juan R. Sánchez_____
Juan R. Sánchez